IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ABELARDO MEDINA,**

                         *Plaintiff,*

v.

**UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, and JOHN DOES 1-10,**

                        *Defendants.*

CAUSE NO. 3:24-CV-490-CWR-BWR

**ORDER**

      Defendant, UMMC, moved for summary judgement. Docket No. 24. Dr. Medina identified evidence demonstrating the existence of genuine issues of material fact with respect to his discrimination claim brought under Title VII. However, he failed to identify sufficient evidence in support of his remaining claims. Therefore, UMMC's motion for summary judgment is granted in part and denied in part.

**Background**

      Dr. Abelardo Medina began working as a plastic surgeon at UMMC in May 2018. He entered an employment contract with UMMC for a term of one year. His employment contract was renewed periodically for one-year terms each time. The final contract Dr. Medina and UMMC agreed to covered the term of July 2021 through June 2022.

      On April 1, 2022, UMMC notified Dr. Medina that his employment contract would not be renewed following the conclusion of the 2022 fiscal year. Dr. Medina filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 6, 2022. He received notice from the EEOC of his right to sue on March 19, 2024. Dr. Medina

subsequently filed his complaint against UMMC initiating this action in the Circuit Court of Hinds County, Mississippi; and UMMC removed the action to this Court. In his complaint, Dr. Medina asserts that his employment contract was non-renewed due to his race and/or nationality and in retaliation for his raising certain concerns to Dr. Anderson regarding unfair treatment.

## Legal Standard

"Summary judgment is appropriate if the pleadings and evidence pointed out to the district court show no disputed material facts and that the movant is entitled to judgment as a matter of law." *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citation omitted). To determine whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A party cannot defeat summary judgment with conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Turner v. Wal-Mart La., L.L.C.*, No. 22-30647, 2023 WL 4763338, at *2 (5th Cir. July 26, 2023) (cleaned up) (citation omitted). "Instead, 'the nonmovant must go beyond the pleadings and designate specific facts' that prove a genuine issue of material fact exists." *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d

2

1069, 1075 (5th Cir. 1994)). Courts "do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quotation marks, emphasis, and citation omitted).

## Analysis

Dr. Medina brings the following claims: (1) racial/national origin discrimination under Title VII; (2) retaliation under Title VII; (3) national origin discrimination under 42 U.S.C. §§ 1981 and 1983; (4) breach of contract; (5) violation of "Section 213-A" of the Mississippi Constitution; and (6) violation of due process under the Mississippi Constitution. The Court addresses each in turn.

### 1.     Race & National Origin Discrimination under Title VII

Plaintiff brings a claim of discrimination based on his race and national origin under Title VII. "When the plaintiff cannot adduce direct evidence of intentional discrimination, courts apply the well-established framework set forth in *McDonnell Douglas Corp. v. Green*." *Chen v. Ochsner Clinic Found.*, 630 Fed. App'x 218, 223 (5th Cir. 2015) (citing 411 U.S. 792 (1973)). Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of discrimination. 411 U.S. at 802. To meet that initial burden, Plaintiff must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (quotation marks and citation omitted). Under this familiar burden-shifting framework, "once the plaintiff presents a *prima facie* case, the burden shifts to the defendant-employer to proffer a legitimate rationale

3

for the underlying employment action." *Id.* at 317-18 (quotation marks and citation omitted). "If a legitimate reason is proffered, the burden returns to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext . . ." *Id.* at 318 (quotation marks and citation omitted). "Showing pretext requires a plaintiff to 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

UMMC concedes that Dr. Medina has satisfied the first three elements of his *prima facie* case,[1] but asserts that he has failed to adduce evidence to support the fourth prong. Dr. Medina points to an affidavit provided by Dr. Jared Davis,[2] who began working in the plastic surgery division at UMMC just a few months after Dr. Medina began working in the same division. Docket No. 29-14. Dr. Davis attests that he raised concerns to Dr. Christopher Anderson, Chair of the Department of Surgery, about the behavior of another doctor, Dr. Ben McIntyre, directed toward Dr. Davis. *Id.* Dr. McIntyre had also complained about his relationship with Dr. Davis. Docket No. 31-1 at 2. Given these complaints, Dr. Anderson—the same Dr. Anderson to whom Dr. Medina brought his own complaint—elected to "refer the matter to Dr. Patrick Smith in Faculty Affairs for mediation." *Id.* By contrast, when faced with Dr. Medina's complaint regarding his relationship with another doctor, Dr. Anderson did not refer the matter to mediation; rather, approximately one month after Dr. Medina communicated his complaint to Dr. Anderson, UMMC notified Dr. Medina that he would

---

[1] Docket No. 25 at 5 ("Admittedly, he satisfies prongs 1, 2 and 3 of the McDonnell Douglas analysis. Dr. Medina is a member of a protected group (Chilean national/Hispanic), he was qualified for his position with UMMC, and his employment contract with UMMC was not renewed.").

[2] The Court relies on the representation of Dr. Medina's counsel that Dr. Davis is outside Dr. Medina's protected group. Docket No. 30 at 14 (describing Dr. Davis at "Black and not foreign-born"). Dr. Davis's affidavit is silent on the issue.

4

not be renewed. Non-renewal is certainly harsher treatment than referral to mediation. Dr. Medina has met his *prima facie* burden with respect to his claim of discrimination under Title VII.

UMMC responds by identifying the legitimate non-discriminatory reason for Dr. Medina's non-renewal as "his inability or refusal to effectively collaborate with the other surgeons at UMMC." Docket No. 25 at 9.³ With this legitimate reason identified, the burden returns to Dr. Medina to demonstrate that the articulated reason is pretext for discrimination.

To rebut this proffered reason, Dr. Medina points to a letter from Dr. Anderson dated January 20, 2021, regarding Dr. Medina's eligibility for an extension of his visa classification as an "Alien of Extraordinary Ability." Docket No. 29-3. Therein Dr. Anderson states that Dr. Medina "has demonstrated a high standard of professionalism . . . with colleagues[.]" *Id.* at 1. Dr. Medina also identifies a peer evaluation form completed in connection with Dr. Medina's request for reappointment, wherein the evaluator⁴ rated Dr. Medina "Superior" in all categories, including "Cooperativeness, Ability to Work with Others," "Practitioner/Nursing Relationship," and "Practitioner/Practitioner Relationship." Docket No. 29-8. The evaluator also concluded: "I recommend [Dr. Medina] without reservation for reappointment." *Id.* Additionally, Dr. Davis attested that he "witnessed Dr. Arnold speak in a pejorative fashion about Dr. Medina on many occasions [] mak[ing] his contempt very open. . . . [Dr. Arnold] made it clear that he did not think Dr. Medina belonged at UMMC and he

---

³ The parties also discussed a concern that was raised regarding the failure rate of flap surgeries performed by Dr. Medina, but the record reflects that this could not have been the reason for his non-renewal, as Dr. Medina was non-renewed before any study of his success rate with that surgery occurred. Docket No. 25 at 10 ("There was also concern regarding the rate of failure in Dr. Medina's flap cases. . . . However, Dr. Anderson made the determination not to renew Dr. Medina's contract before that came to pass.").

⁴ This form appears to have been completed by Dr. Davis, but neither party has confirmed.

5

wanted him out." Docket No. 29-14 at 3. This evidence, in addition to the presence of an easily rebutted, non-discriminatory reason discussed as an alternative,[5] collectively satisfies Dr. Medina's rebuttal burden and evinces the presence of a genuine dispute of material fact.

UMMC's motion for summary judgment is denied with respect to Dr. Medina's claim for discrimination under Title VII.

### 2. Retaliation under Title VII

The same *McDonnell Douglas* framework applies when evaluating retaliation claims brought under title VII. *Wiley v. Centene Mgmt. Co.*, LLC, No. 3:24-CV-124, 2026 WL 195019, at *2 (S.D. Miss. Jan. 26, 2026) ("The familiar *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation cases.") (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). "For purposes of establishing the *prima facie* case a 'Title VII retaliation plaintiff must establish that: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.'" *Id.* (quoting *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)).

UMMC asserts that Dr. Medina has failed to make a *prima facie* showing, because he failed to demonstrate that he engaged in a protected activity. Dr. Medina purports that his meeting with Dr. Anderson on February 22, 2022, constitutes his protected activity. Docket No. 30 at 18-19. For this meeting to qualify as a protected activity, therein, Dr. Medina would have to have "opposed any practice made an unlawful employment practice by [Title VII.]"

---

[5] See *supra* at n.3. This type of record evidence "raises questions about the credibility of the Defendant['s] proffered, non-discriminatory reason and whether it amounts to a pretext for discrimination. And it is those kinds of credibility determinations which rest within the province of a jury." *King v. Bd. of Trustee of State Inst. of Higher Learning of Miss.*, No. 3:11-cv-403, 2014 WL 1276477, at * 8 (S.D. Miss. March 27, 2014).

6

42 U.S.C. § 2000e–3(a). In that meeting Dr. Medina expressed that he felt discriminated against. However, UMMC argues, and produces a contemporaneous email supporting their assertion that, during that meeting, Dr. Anderson specifically asked Dr. Medina if he felt that "he got criticism because of his race, ethnicity, color, sex, religion, disability or any other reason like that" and Dr. Medina replied "with an emphatic no, and said that perhaps he is using the wrong word." Docket No. 24-6 at 1. Dr. Medina did not respond to UMMC's characterization of that exchange. Nor did he identify how else he may have opposed a practice forbidden by Title VII during that meeting.

Seeing no opposition, the Court determines that Dr. Medina failed to meet his burden to demonstrate that the February 22, 2022, meeting was in fact a protected activity as contemplated by Title VII. Therefore, he has failed to make the required *prima facie* showing, and summary judgment is appropriate on this claim.

### 3. National Origin Discrimination under 42 U.S.C. §§ 1981 and 1983

A claim based on 42 U.S.C. § 1981 "is limited by the avenue through which it is brought, § 1983." *Jones v. Miss. Secy. of State*, No. 3:18-CV-281, 2019 WL 13131408, at *5 (S.D. Miss. Feb. 11, 2019) *vacated on other grounds sub nom. Jones v. Hosemann*, 812 F. App'x 235 (5th Cir. 2020). "UMMC, as an arm of the state, is not a 'person' within the meaning of 42 U.S.C. § 1983, and therefore is not a proper defendant in a § 1983 suit." *Mawson v. Univ. of Miss. Med. Ctr.*, No. 3:11-CV-574, 2012 WL 6649323, at *2 (S.D. Miss. Dec. 20, 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Dr. Medina does not identify any defendant other than UMMC against whom he levies this claim. Summary judgment is granted with respect to Dr. Medina's claim brought under 42 U.S.C. §§ 1981 and 1983.

7

### 4. Breach of Contract and Section 213-A of the Mississippi Constitution

Dr. Medina altogether failed to address the challenges UMMC raised regarding his claims for breach of contract and violation of Section 213-A of the Mississippi Constitution. The Court considers those claims abandoned, and grants summary judgment.

### 5. Due Process under the Mississippi Constitution

Dr. Medina asserts that UMMC deprived him of a property interest and a liberty interest. He has not, however, produced evidence sufficient to support either claim.

As to the former, the Mississippi Supreme Court has held that non-tenured positions, like the one Dr. Medina held, do not on their own convey a protected property interest in continued employment, sufficient to give rise to a claim under the State's Due Process Clause. *Hall v. Board of Trustees of State Inst. of Higher Learning*, 712 So. 2d 312, 320-21 (Miss. 1998). Dr. Medina has not identified any other property interest that could be at issue.

With respect to a deprivation of a liberty interest, "a plaintiff must show (1) that he has been stigmatized, (2) in or as a result of the 'discharge' process, and (3) that the stigmatization resulted from charges made public by his employer." *Id.* at 322 (quoting *Ishee v. Moss*, 668 F. Supp. 554, 558 (N.D. Miss. 1987)). Dr. Medina has not offered evidence to show the presence of any of these required elements. Summary judgment is granted with respect to Dr. Medina's Mississippi Due Process claims.

## Conclusion

The Court has considered all arguments raised by the parties; those not addressed in this Order would not have changed the result. UMMC's motion for summary judgment, Docket No. 24, is granted in part and denied in part.

**SO ORDERED**, this the 3rd day of March 2026.

                                                  s/ Carlton W. Reeves
                                                  UNITED STATES DISTRICT JUDGE